## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

RICHARD SHRECK                                                    PETITIONER
ADC #160939

V.                                    NO. 4:21-cv-556-JTR

DEXTER PAYNE, Director,                                          RESPONDENT
Arkansas Division of Correction

## <u>MEMORANDUM AND ORDER</u>

Pending before the Court is a § 2242 Petition for Writ of Habeas Corpus filed

by Petitioner  Richard Shreck ("Shreck").   On May 29, 2015, a Faulkner County

jury found Shreck guilty of two counts of conspiracy to commit rape.  Shreck was

sentenced to consecutive terms of thirty years' imprisonment and fined $15,000.00

on each count.  He is seeking relief from his state court convictions and sentences.

## I. Background

After entering an online chat room—with participants typically focused on

discussing sexually exploiting children, Shreck initiated contact with Shannon Cook

("Cook"), a Faulkner County Sheriff's Office investigator in the Internet Crimes

Against Children Division.  In Cook's undercover persona, she presented as Brooke

Stumbaugh, a single mother of two children (a ten-year-old daughter and an eight-

year-old son), who was willing to offer her children for sexual exploitation.  Over

almost  three  weeks,  Shreck  participated  in  online  conversations  with  Cook,

discussing his plans to engage in sexual intercourse and other deviant acts with her fictitious children.  He sent Cook an email confirming a two-night reservation for one adult and two children at his rental property in Hot Springs.  The two agreed to meet at a Walmart parking lot in Conway.  Their plan was for Cook to follow Shreck back to Hot Springs, with the children riding in Shreck's vehicle.  At the agreed time, Shreck traveled from Hot Springs to meet Cook and the children.  He brought a gift for each child.  After Shreck arrived at the Conway meeting place and made contact with Cook, he was arrested.

At trial, the prosecution introduced transcripts of the online conversations between Cook and Shreck.  Cook read them aloud during her direct examination. Jack Lassiter represented Shreck.  The defense theory was that Shreck was engaging in "roleplay or fantasy or BS" and lacked the intent required for conspiracy to commit rape.  Trial Record 233.  Lassiter alternatively raised the affirmative defense of entrapment, arguing Cook "lured" Shreck to Conway.  Trial Record 616.  Lassiter also raised the affirmative defense of renunciation, contending that, before driving to the Conway meeting place, Shreck changed his mind about sexually exploiting the children.  The jury rejected the defense theory and the affirmative defenses.

The Arkansas Court of Appeals affirmed the sentences.  *Shreck v. State* (*Shreck I*), 2016 Ark. App. 374, 499 S.W.3d 677.  On review, the Arkansas Supreme Court also affirmed.  *Shreck v. State* (*Shreck II*), 2017 Ark. 39, 510 S.W.3d 750.

2

When the Faulkner County Circuit Court rejected Shreck's post-conviction arguments without a hearing and in a summary order, the Court of Appeals reversed and remanded for an order compliant with state procedural rules. *Shreck v. State* (*Shreck III*), 2019 Ark. App. 85, 572 S.W.3d 35. After hearing evidence, the circuit court entered a proper order again denying post-conviction relief, and the Court of Appeals affirmed. *Schreck v. State* (*Shreck IV*), 2020 Ark. App. 354, 605 S.W.3d 278. Having exhausted his state court remedies, Shreck filed this timely federal petition for a writ of habeas corpus.

## II. Discussion

Shreck, a state prisoner, may seek a writ of habeas corpus in federal court, if he is "in custody in violation of the Constitution or laws or treatises of the United States." 28 U.S.C. § 2254(a). Before seeking habea*s* review, Shreck must have exhausted available state remedies by fairly presenting each of his claims in state court. *Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999). A claim is procedurally defaulted when the state court declined to review it because the petitioner failed to comply with a state procedural rule. *Coleman,* 501 U.S. at 729–32. Procedural default also occurs when a petitioner did not present a claim in state court and a state court remedy is no longer available. *O'Sullivan*, 526 U.S. at 848. If a claim is procedurally defaulted, this Court can consider it only if Shreck establishes either cause for the default and actual prejudice,

or that the default will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750.

On claims adjudicated on the merits in state court, this Court may grant habeas relief only if the petitioner satisfies statutory requirements. Shreck must demonstrate that the state court adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A decision is contrary to federal law if the state court "applies a rule that contradicts the governing law" set out by the Supreme Court, or if it considers facts that are "materially indistinguishable" from a Supreme Court case and decides differently. *Brown v. Payton*, 544 U.S. 133, 141 (2005).

Shreck argues that he is entitled to habeas relief because his trial lawyer's guilt-phase work fell short of the constitutional standard. He says that he did not receive adequate representation when Lassiter failed to (1) object to the introduction of online conversations referring to "snuff sex"[1] and "bondage sex," and (2)

---

[1] In arguing for the admissibility of "snuff sex" evidence in the sentencing phase, the prosecution described the act as "impaling a woman or girl with a large rod that's sharpened on the end" during or after sexual intercourse. Trial Record 637.

4

adequately develop the defense theory (lack of intent).  Shreck alternatively argues the cumulative effect of these attorney errors warrants habeas relief.

Shreck fairly presented the individual ineffectiveness claims in state post-conviction proceedings.  Deference review of the Arkansas Court of Appeals decision denying relief is required.  28 U.S.C. § 2254(d).  Because Shreck did not raise the cumulative ineffectiveness claim in state court, it is procedurally defaulted.

## A.  Cumulative Effect of Counsel's Ineffectiveness

Shreck makes no argument that procedural default of the cumulative ineffectiveness claim is excused.  Based on record review, this Court, moreover, finds no reason to excuse the default.  The claim is also denied under alternative merits analysis.  28 U.S.C. § 2254(b)(2).  Habeas relief is not available based on the cumulative effect of attorney errors.  *Shelton v. Mapes,* 821 F.3d 941, 950–51 (8th Cir. 2016).  This ineffectiveness claim is denied.

## B.  Failure To Object To "Snuff Sex" References

Shreck argues his trial lawyer's guilt-phase representation was constitutionally deficient when he did not object to a "snuff sex" reference in an online conversation introduced at trial.  The Court of Appeals outlined the reference and determined Lassiter's work did not fall below the constitutional standard:

> We initially note that although Shreck claims Mr. Lassiter generally failed to object to snuff-sex evidence offered during the guilt phase of trial, he specifically alleges error only as to testimony occurring at pages 364–66 of the underlying trial transcript. That testimony was offered by

Officer Cook regarding the chatroom conversations she had with Shreck. As Shreck acknowledges, Mr. Lassiter successfully moved before trial to have the portions of the chatroom transcripts that referred to snuff sex redacted. The first challenged chats, in the context of the conversation between Officer Cook and Shreck, do not specifically mention snuff sex. The second challenged mention of snuff sex was a statement by Officer Cook that "not getting caught" was the reason she was against snuff sex with her children. Neither of these statements was uttered by Shreck; rather, they were made by Officer Cook. The third challenged statement was made by Shreck, mentioning that it was Officer Cook, not Shreck, who had mentioned snuff sex and "who had thought about snuff sex."

At the hearing on Shreck's Rule 37 petition, Mr. Lassiter candidly stated that he could not "think of any reason right now why I shouldn't have objected to that or maybe I wanted to let it in"—potentially part of a trial strategy to cast doubt as to Shreck's intent to harm children. Moreover, our review indicates that the challenged references to snuff sex pale in comparison to what Shreck himself stated about snuff sex in the redacted portions. Given the great extent to which Mr. Lassiter successfully kept Shreck's comments about snuff sex from the jury during the guilt phase of trial, we hold that there is no merit to Shreck's argument that the circuit court erred in denying his claim that Mr. Lassiter performed deficiently at trial for failing to object to these few mentions of snuff sex.

Moreover, we hold that Shreck suffered no prejudice because of these references to snuff sex and bondage sex. Shreck's defense was that the conversations he had with Officer Cook about his desire to commit sexual acts with children were "all roleplay or fantasy or 'BS.' " Given the contents of the nonchallenged portions of the chatroom transcripts, it is hardly likely that these inconsequential mentions of snuff sex and bondage sex had any effect on the outcome of trial. The nonredacted portions of the transcript, which the jury had during deliberations, reference in detail Shreck's desire to perform horrific acts on children. Despite Shreck's attempt to downplay it, he undisputedly made arrangements to meet Officer Cook and her alleged minor children at a Walmart parking lot—where he showed up as scheduled with gifts for the children.

*Shreck IV,* 2020 Ark. App. 354, *10–12, 605 S.W.3d at 286.

The Court of Appeals decision was not contrary to, or an unreasonable application of, clearly established federal law; nor was it an unreasonable determination of the facts.  28 U.S.C. § 2254(d).  The state appellate court correctly recognized and applied the familiar *Strickland v. Washington* standard for determining adequate representation and resulting prejudice.  *Shreck IV,* 2020 Ark. App. 354, *13–14, 605 S.W.3d at 287 (citing *Strickland v. Washington,* 466 U.S. 668, 694 (1984)).  "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on has having produced a just result."  *Strickland,* 466 U.S. at 686.  Review of the trial lawyer's performance is "highly deferential" and "every effort [must] be made to eliminate the distorting effects of hindsight."  *Id.* at 689.  "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of professional reasonable assistance . . .."  *Id.* To satisfy the prejudice element, Shreck must demonstrate "a reasonable probability that, but for counsel's professional errors, the result of the proceeding would have been different."  *Id.* at 694.

The Court of Appeals was not unreasonable in holding the trial lawyer's representation "did not fall below an objective standard of reasonableness."  *Shreck IV,* 2020 Ark. App. 354, *13, 605 S.W.3d at 287.  Before trial, Lassiter objected to

the guilt-phase introduction of "snuff sex" discussions in the online conversations between Shreck and Cook.  The prosecution agreed, and discussions of the topic were redacted from the transcripts.[2]   The "snuff sex" reference raised by Shreck here was not included in the motion in limine or part of the redacted material.

Shreck argues Lassiter should have objected to the unredacted "snuff sex" reference when the prosecution introduced the online conversation at trial.  But he has not rebutted the Court of Appeals' characterization of the reference as "inconsequential."  *Shreck IV,* 2020 Ark. App. 354, *12, 605 S.W.3d 278, 286. Shreck therefore has not overcome the presumption that his trial lawyer's work "[fell] within the wide range of professional reasonable assistance."  *Strickland,* 466 U.S. at 689.  Based on Lassiter's hearing testimony and review of the state court record, the Court of Appeals also did not unreasonably find Lassiter's decision may have been "part of a trial strategy to cast doubt as to Shreck's intent to harm children."  *Shreck IV,* 2020 Ark. App. 354, *11, 605 S.W.3d at 286.  Lassiter testified at the post-conviction hearing that he did not remember why he did not object to the material, but that he may have "wanted to let [the evidence] in."  Rule 37 Record 76.

---

[2] During the penalty phase, the trial court permitted the prosecution to introduce the unredacted online conversations with Shreck stating his desire to engage in "snuff sex," an image of a rod that Shreck sent to Cook, and related images found on Shreck's computer.  Rejecting Shreck's argument that the penalty-phase evidence was irrelevant and unduly prejudicial, the Arkansas Supreme Court affirmed.  *Shreck I,* 2017 Ark. 39, *3–6, 510 S.W.3d 750, 752–53.

The unredacted "snuff sex" reference was not about Shreck's interest in the deviant act.

In light of the overwhelming evidence of Shreck's guilt and the "inconsequential" reference raised here, Shreck also has not demonstrated *Strickland* prejudice resulted from any attorney error.   He has not shown a reasonable probability that, if Lassiter had objected to the unredacted "snuff sex" reference, the trial court would have granted his motion or the jury would have found him not guilty.  *Strickland,* 466 U.S. at 694.  He has not shown a reasonable probability that, if Lassiter had asked the trial court to declare a mistrial, the trial court would have granted the motion.  *Id.*  Under deference review, the ineffectiveness claim is denied.

## C.  Failure To Object To "Bondage Sex" References

Shreck next contends his trial lawyer's representation was professionally unreasonable when he did not object to part of the online conversation about "bondage sex."  Shreck told Cook that he had "been involved in BDSM[3] stuff off and on for years" and "sometimes" met "a mom in Little Rock . . . to do things with her."  Trial Record 356–57.  He stated that "if this works out, I will break things off with her.  I won't need her anymore."  *Id.*  Shreck also says Lassiter should have objected when the prosecution posed a related question to him on cross-examination. He contends that, because the references involved an adult,  his trial lawyer should

---

[3] Cook testified that BDSM is an acronym for "Bondage," "Dominance," and "Sadomasochism."  Trial Record 358.

have argued the evidence was unduly prejudicial and irrelevant.  Lassiter testified at

the post-conviction hearing that he did not object to the references because he did

not think the trial court would have granted the motion.   Shreck does not argue

Lassiter should  have objected to his subsequent online statement that he "would like

to work into [bondage sex] at some point" with the fictitious children.  Trial Record

359.

The Court of Appeals held Lassiter's failure to object was not constitutionally

deficient performance under the *Strickland* standard:

> We hold that Shreck failed to establish in his petition that a motion to
> exclude the references to snuff sex and bondage sex would have been
> successful. Specifically, regarding the failure to object to the evidence
> related to bondage sex under the particular facts of this case, a motion
> to exclude the references would not have been successful.
>
> Arkansas Rule of Evidence 401 (2019) defines relevant evidence as
> evidence having any tendency to make the existence of any fact that is
> of consequence to the determination of the action more or less probable
> than it would be without the evidence. In contradiction to Shreck's
> defense at trial that the chatroom conversations he had with Officer
> Cook about his desire to commit sexual acts with children were "all
> roleplay or fantasy or 'BS,' " Shreck told Officer Cook that although
> he was "involved in [bondage] stuff" with a mom he meets sometimes
> in Little Rock, "if this works out, I will break things off with her. I won't
> need her anymore." Because Shreck's expressed willingness to end an
> existing bondage-type sexual relationship with another woman if sex
> with Officer Cook's alleged underage children came to fruition was
> relevant to counter his defense at trial that it was all merely a fantasy,
> we hold that the circuit court did not err in finding that there was no
> deficient performance under *Strickland*.

*Shreck IV,* 2020 Ark. App. 354, *12–13, 605 S.W.3d at 287.  As quoted at page 5, the Court of Appeals further held that Shreck failed to demonstrate *Strickland* prejudice.

The Court of Appeals decision was not contrary to, or an unreasonable application of, clearly established federal law; nor was it an unreasonable determination of the facts.  28 U.S.C. § 2254(d).  Under deference review, the state appellate court did not unreasonably apply the *Strickland* standard in finding Lassiter's work was constitutionally adequate and did not deprive Shreck of a fair trial.  Because Shreck's statements contradicted the defense "fantasy" theory, the court did not unreasonably find Shreck's statements were relevant.  In light of the statements' relevance and the remainder of the online conversations, Shreck's "bondage sex" comments also were not unduly prejudicial.  Lassiter's decision not to object "[fell] within the wide range of professional reasonable assistance." *Strickland,* 466 U.S. at 689.  In light of the overwhelming evidence that Shreck committed the charged crimes and Shreck's subsequent "bondage sex" remarks related to the fictitious children, he has not shown *Strickland* prejudice either.  If this evidence had been excluded, there is not a reasonable probability of a different trial outcome.   *Strickland,* 466 U.S. at 694.   Under deference review, the ineffectiveness claim is denied.

### D.  Failure To Present A Defense Based On Lack Of Intent

Shreck also argues his trial lawyer should have worked harder to show he (Shreck) lacked the intent necessary for conspiracy to commit rape.  Shreck says that, with more thorough examinations of him and Cook, Lassiter could have shown his online statements were part of a fantasy and that he (Shreck) did not intend to follow through to commit deviant sexual acts on the fictitious children.  He repeats his state court arguments summarized by the Court of Appeals:

> Shreck claims that Mr. Lassiter could—and should—have presented testimony by Shreck and by Officer Cook to confirm that when Shreck drove into the Walmart parking lot and pulled up beside Officer Cook in her vehicle, he could easily see that she had no children in her vehicle—yet he still remained and did not attempt to drive away. Testimony at trial indicated that from the time Shreck parked beside Officer Cook and the two introduced themselves, a period of ten to fifteen seconds passed before other officers converged to arrest him. Shreck argues that his remaining stationary during this period of time demonstrates that, contrary to the State's theory that Shreck's purpose was to meet with the alleged children, his actual purpose was to meet only with Brooke Stumbaugh. He submits that those ten to fifteen seconds would have provided him with more than enough time to process that his alleged deviant sexual desires would not be fulfilled because Officer Cook had no children with her in the vehicle, contradicting the State's theory.
>
> Shreck also argues that Mr. Lassiter should have investigated and presented testimony that would have demonstrated to the jury that during the course of their chats, Shreck had actual knowledge that the woman with whom he was chatting, Officer Cook (as Brooke Stumbaugh), had no minor children. He claims that such evidence would have shown that Officer Cook understood that Shreck knew that Brooke Stumbaugh had no minor children.

Shreck notes that during his chats with Officer Cook, he conducted online research in an attempt to find information on Brooke Stumbaugh. The State asserted that Officer Cook did not know that a real Brooke Stumbaugh existed and simply made up the name for purposes of her dealings with Shreck. But Shreck maintains that because the name is so unusual, this could not have been true. Well before the meeting at Walmart, Shreck googled the name "Brooke Stumbaugh," accessed a Twitter account in that name, and learned that there is a real person with that name who lives in Lonoke County and is a massage therapist. Importantly, he points out that this person indicated in a post that she was thirty-two years old and had a son sixteen years earlier—rather than having two children who are eight and ten years old as presented by Officer Cook in her role as Brooke Stumbaugh.

During Shreck's chats with Officer Cook, he asked questions about whether she was a massage therapist, etc. He suggests that this information would have placed a reasonable investigator on notice that Shreck knew that the woman with whom he was communicating about having sex with her alleged eight- and ten-year-old children did not have children that age. The trial record indicates that Mr. Lassiter began pursuing this line of defense, asking both Shreck and Officer Cook a question or two about the "real" Brooke Stumbaugh; however, Shreck maintains that Mr. Lassiter abandoned that defense and did not pursue it any further.

*Shreck IV,* 2020 Ark. App. 354, *14–16, 605 S.W.3d at 288.  The Court of Appeals

rejected Shreck's argument, finding Lassiter covered this ground at trial:

[O]ur review of the underlying trial record indicates that testimony from Shreck was, in fact, presented to the jury that he had "googled" the name "Brook Stumbaugh" and discovered someone with that name who was thirty-two years old and had a sixteen-year-old son. He further stated that from that information, he concluded that she did not have eight- and ten-year-old children. Shreck further testified that although Officer Cook explained to him that she was a teacher and keeping a low profile when he questioned her about her identity, he believed he had arranged to meet the Brooke Stumbaugh who did not have small children. However, despite that testimony, as the circuit court specifically noted in its opinion denying Rule 37 relief, Shreck

continued to chat with Officer Cook as Brooke Stumbaugh "regarding the use of young children and sexual acts."

Shreck also testified at trial that he believed there were no actual children involved because of the above-referenced Twitter post by the real Brooke Stumbaugh—which was introduced at trial by Mr. Lassiter. At trial, Shreck could not explain why he brought gifts for children that he supposedly believed to be nonexistent except to say:

> She asked me to bring gifts for the kids when I came to Conway. I didn't believe that there were kids. I brought the gifts because she made it apparent in my mind that it is important to her that I follow through with the things that she asked me to do.

Shreck further testified that he had purchased the gifts just hours before arriving at the Walmart parking lot in Conway. In addition to this testimony from Shreck, the testimony about his belief in the existence or nonexistence of "Brooke Stumbaugh" and her alleged children resulted in at least two rounds of cross- and redirect examination. We agree with the State that the verdict indicates that the jury simply rejected Shreck's testimony that when he arrived at Walmart bearing recently purchased gifts for children, he did not believe he was meeting children for deviant sexual purposes.

*Shreck IV,* 2020 Ark. App. 354, *18–19, 605 S.W.3d at 290.  The Court of Appeals also rejected Shreck's argument that more testimony on these points would not have made a difference:

> [T]he circuit court did not err in finding that any additional self-serving testimony from Shreck would not have changed the outcome of trial. There is no merit to Shreck's assertion that his innocent intent to meet Brooke Stumbaugh and not her children was established because he did not drive off during the "lengthy" ten to fifteen seconds that elapsed as he parked next to Officer Cook's vehicle in the Walmart parking lot and observed no children in the car.

*Shreck IV,* 2020 Ark. App. 354, *20, 605 S.W.3d at 290.

14

The Court of Appeals decision was not contrary to, or an unreasonable application of, clearly established federal law; nor was it an unreasonable determination of the facts. 28 U.S.C. § 2254(d). The state appellate court was not unreasonable in finding Shreck failed to demonstrate constitutional ineffectiveness under the *Strickland* standard. On direct examination, Lassiter asked Shreck to confirm his repeated statements in the online conversations that he did not intend to do anything illegal. He elicited testimony from Shreck that he traveled to Conway to meet Cook and bought gifts for the fictitious children only because Cook had insisted. Lassiter also introduced a copy of the Twitter page that Shreck found for a "Brooke Stumbaugh," a massage therapist in Cabot. In the online conversation transcript, Shreck asked Cook if she was the Brooke Stumbaugh that he found on Twitter. Cook responded that she was not that Brooke Stumbaugh, that she was a sociology teacher at a Conway college, and that she tried to keep a low profile online. Lassiter asked Shreck to explain why he continued to believe the Twitter account holder was the same person that he expected to meet in Conway. Shreck testified that he believed the Twitter page image of Stumbaugh matched the image of Cook that she had sent him.[4] Lassiter elicited testimony from Shreck that, because the Twitter account holder did not have young children, he did not expect to meet

---

[4] Cook testified the image that she, as Stumbaugh, sent Shreck was of a third party whose identity was protected.

underage children in the Walmart parking lot.  Shreck also testified that, based on his conversation with Cook about the Twitter page, she knew that he did not believe there were underage children involved.  Lassiter also elicited testimony from Shreck that, because of a large telescope in his  backseat, there would not have been room for children to ride in his vehicle.  Shreck testified that his plan was to spend an evening with Cook, as Stumbaugh, alone in Hot Springs.

Shreck argues Lassiter was remiss in not examining him and Cook on this point in more detail.  But the trial lawyer's work on this point was not constitutionally ineffective.  There is not a reasonable probability that more examination and evidence would not have made a difference in the jury's verdict. Shreck has failed to establish either *Strickland* element.  The Court of Appeals was not unreasonable in finding Shreck's claim is "merely an expression of his disagreement with how the jury weighed the evidence that was before it."  *Shreck IV,* 2020 Ark. App. 354, \*21, 605 S.W.3d at 291.  The constitutional standard, moreover, did not require Lassiter to raise a meritless argument that Shreck's intention to meet only Stumbaugh was demonstrated by his failure to immediately drive away when she arrived alone.  Examination and argument on this point would not have resulted in a different verdict either.  The ineffectiveness claim is denied.

IT IS THEREFORE ORDERED that the Petition for Writ of Habeas Corpus be DENIED and this habeas action be DISMISSED with prejudice.  Pursuant to Rule

11(a) of the Rules Governing Section 2254 Cases, no certificate of appealability shall be issued.

DATED  this 15th day of September, 2023.

_____
UNITED STATES MAGISTRATE JUDGE